## Mary Ann Durfee v. James McClurg.

Where complainant, a married woman, made an unconditional assignment of a mortgage to defendant, and delivered it to her husband, who delivered it over to defendant, and the latter gave the husband a receipt, stating that the mortgage was received of the husband as collateral security for a debt owing by him to defendant, and there was no evidence of any negotiations between complainant and defendant, or of any understanding on her part that the transfer of the mortgage was to be upon any condition, or of any instructions by her in reference to it;—*Held*, That the Court could not say from these facts that the assignment was intended by complainant as security only, and not to be passed absolutely to defendant.

Complainant's husband having made an arrangement of the debt secured by the assignment, and agreed with defendant that the latter should have and retain an absolute title to the mortgage,—*Held*, That this arrangement was binding upon complainant, and that she could not require defendant to re-assign to her the mortgage.

Under the present statutes of Michigan, contracts of sale by a married woman are to be treated as if made by a *feme sole*.

Where an answer on oath is waived, complainant may use the answer as an admission by defendant of any facts stated in it necessary to establish his case. But he can not use one part and exclude other parts relating to the same subject that would be responsive to the bill had the answer been under oath.

*Heard December 2d, 1858. Decided January 12th, 1859.*

Appeal from Wayne Circuit in Chancery.

The bill alleges that complainant is the wife of Benjamin C. Durfee: That on the 14th day of November, 1855, said Benjamin was in partnership in the drug and grocery business, in Detroit, with one Edward J. Moore, under the firm and style of Moore & Durfee; that on that day Moore & Durfee were indebted to defendant as follows: $500 on a promissory note for that amount, dated August 15th, 1855, payable seven months from date, with ten per

cent. interest; $500 on a note, dated September 10th, 1855, payable six months from date, with ten per cent. interest; $500 on a note dated September 29th, 1855, payable six months from date, with ten per cent. interest; $1800 on three promissory notes of $600 each, dated respectively November 14th, 1855, and payable at six, nine, and twelve months from date, with ten per cent. interest; that said Benjamin was also indebted to defendant in $1400, on a note dated November 14th, 1855, and payable one year from date, with ten per cent. interest payable semi-annually: That on the said 14th day of November, 1855, at the request of said Benjamin, the complainant made an assignment to defendant of a mortgage given by Langford G. Berry to her for $1800, and dated April 1st, 1854, upon which mortgage was endorsed, April 1st, 1855, $576; and which assignment was made as collateral security for the payment to defendant of the notes so held by him against Moore & Durfee and said Benjamin, and was on condition that if the said notes should not be paid, the said mortgage should be collected at the expense of complainant, and the money applied on said notes; that on the 30th day of May, 1856, defendant purchased all the right, title, and interest of said Benjamin in the firm of Moore & Durfee, and that in said sale, said Benjamin actually paid all the said notes of Moore & Durfee and of said Benjamin.

The bill further states that said defendant, previous to the payment of said notes by said Benjamin, had collected $500 on said mortgage, but had not applied the same on the notes; that since the payment of said notes, complainant has requested defendant to re-assign the mortgage to her, and pay her the moneys collected thereon; which he refuses to do. And she prays for decree for the re-assignment of said mortgage, an account of the moneys paid thereon, and the payment of the same to her.

Defendant, by his answer, admits substantially the facts

alleged in the bill; but says that whether the assignment of the Berry mortgage to him was made at the request of said Benjamin, he does not know; that he never saw complainant, and never transacted any business with her; that he loaned moneys to said Benjamin, and to Moore & Durfee, on receiving security therefor; that said Benjamin assigned to him another mortgage made by said Berry as security for some of the same indebtedness; that said Benjamin wanted to obtain a further loan from defendant, and offered to procure, as security therefor, an assignment of complainant's said mortgage; that defendant loaned money accordingly on the security of said assignment, and was entirely regardless from whom the assignment came, provided it properly conveyed the mortgage; that he had no privity of contract with complainant, and did not· then, and does not now, know whether said Benjamin bought or borrowed of her the mortgage; but he alleges, on information and belief, that Moore & Durfee bought the mortgage of complainant for the purpose of using the same to borrow money with, and gave her their notes therefor, secured by chattel mortgage on their stock of goods; and he says the assignment of the mortgage to him was absolute in its terms, and the understanding that it was to be held as collateral was by parol; and he denies that complainant was to be at the expense of its collection.

As to the purchase of said Benjamin's interest in said firm, defendant says that said Benjamin agreed to sell out his interest at $1035, in the assets of Moore & Durfee, to be selected by him, and the defendant purchased at that rate, agreeing to pay complainant's chattel mortgage on the goods, and to take the two Berry mortgages in full payment of the indebtedness from the firm and from said Benjamin to defendant, and further to pay and assume all the existing liabilities of Moore & Durfee, and indemnify said Benjamin against the same; that it was

further agreed, as a part of the same transaction, that, instead of paying complainant in money, she should be paid by a transfer of one of the Berry mortgages; said Benjamin asserting that she was willing to receive such assignment in lieu of money; and that said agreement was carried out in all its particulars: That said Benjamin procured from complainant a release of said chattel mortgage, which was delivered to defendant on his assigning to complainant the mortgage assigned by said Benjamin to defendant; which mortgage was so assigned to her instead of the other, because the one made to her had been in part paid to defendant, and the other was of the same amount as her chattel mortgage, and therefore more convenient to use in paying such chattel mortgage. And defendant avers that complainant was fully aware of all the terms of this arrangement, and has since collected, in whole or in part, the mortgage so assigned to her, and appropriated the proceeds.

A general replication having been filed, and the several papers referred to in the bill and answer put in evidence, the evidence of E. C. Walker was taken for complainant, as follows: "I was retained as one of defendant's attorneys May 30th, 1856. At that time there had been an inventory taken of the assets and liabilities of Moore & Durfee. From a statement made at that date, I have no doubt that defendant held the notes of Moore & Durfee and B. C. Durfee to the amount of $4700. He held the three $600 notes mentioned in the bill — as to the other notes, I do not recollect their amount." "I think a payment had been received by defendant on the mortgage in question, of that date. I can not tell its amount. I do not know whether it had been endorsed on any of the notes or not." "I do not know where the $1400 note of B. C. Durfee is — whether he ever took it up or not. Defendant still holds the three $600 notes."

Being examined for defendant, the same witness stated:

Durfee v. McClurg.

"In May, 1856, Moore & Durfee were indebted to defendant as shown in the receipt" [a copy of which is given below]. "Moore & Durfee did not entirely agree in business matters. Defendant was Moore's father-in-law. He directed me, as Moore's counsel, to procure a dissolution of the firm of Moore & Durfee, in some way, at all events. I examined into their affairs, and spent several days in negotiating the matter between defendant and Moore & Durfee, who were all in Detroit, and all present at the termination of the negotiations. A settlement of all matters between them was finally agreed upon as follows: The defendant took the two mortgages as payment on the indebtedness to him, as far as they went. He bought all the assets, notes, and accounts of Moore & Durfee. For Mr. Durfee's interest, he was to pay as follows: He was to pay to Mr. Durfee the amount of the mortgage which he (Durfee) had procured his wife to assign to defendant, for which Durfee had given to complainant, his wife, a chattel mortgage on the stock in trade of Moore & Durfee. In consideration of such payment, the chattel mortgage held by complainant was to be discharged. Defendant was to indemnify and hold harmless Mr. Durfee from all debts of Moore & Durfee. It was agreed that the sums paid to Mr. Durfee should be paid as follows: In part by the re-transfer of the mortgage which he had originally assigned to defendant, and the balance was to be paid in certain bills receivable of Moore & Durfee, which were to be transferred to his individual use. Payment was made as above stated, and the papers drawn, and all ready to be delivered except the release of complainant's chattel mortgage. I drew such a release, and went with Mr. Durfee to his house, in his buggy, to get complainant to execute it. I did not get out of the buggy. He took the release into the house, and, after the lapse of about half an hour, returned with it signed. When the re-assignment above mentioned was about to be made out, Mr. Durfee

requested that it might be made to complainant. The papers were all delivered, and the arrangement carried out as above set forth. The defendant has since then paid most of the debts of Moore & Durfee."

On his cross-examination, the witness stated: "The complainant was not present at all during any of the negotiations. I do not know that she knew any thing of them, except from her signing the release. The whole of the transaction between defendant and Moore & Durfee was closed by the single arrangement disclosed in my direct-examination. The different parts of the settlement were all closed at once as one thing. To get at the settlement, I myself made an examination of all the books of Moore & Durfee, and got a full statement of the sums due to and by them. For the value of the goods, I took, as a basis, an inventory then lately made by Moore & Durfee. I made out an estimate of the value of all their assets, and of the amount of their liabilities, and thus came at the amount of Mr. Durfee's interest in the concern." Being asked, "Were the mortgages referred to, and the notes to which they were collateral, figured, in general, among the other matters of account on the final settlement referred to?"—the witness replied, "I do not recollect how they were figured in, exactly. Many different estimates and statements were made during the negotiations. In some of them, I know the indebtedness to the defendant was included among bills payable, and the mortgages reckoned among the assets. Upon the final settlement, Mr. Durfee was to receive $2496.34. I saw the chattel mortgage of which I have spoken, on the files. In that way I knew of its existence. The indebtedness of the firm of Moore & Durfee was quite large — several thousand dollars. The consideration which defendant got for assuming to pay the debts, was all the goods of the firm, and the bills payable and accounts. I can not state whether Mr. Durfee gave any particular reason why he wished to have the mortgage as-

signed to his wife. It may have been because he wished to put it in her name to prevent his responsibility for this indebtedness, which the defendant had assumed to pay. I know nothing about the chattel mortgage, except from seeing it on the files, and from hearsay."

The following is a copy of the receipt given by defendant on receiving the assignment of the mortgages: "Received November 14th, 1855, from Benjamin C. Durfee, an assignment bearing even date herewith, of a certain mortgage made by Langford G. Berry to Mary Ann Durfee for the sum of $1800 and interest, dated April 1st, 1854, upon which is endorsed, April 1st, 1855, $576. Also the assignment of another certain mortgage made by said Berry to said B. C. Durfee, dated April 1st, 1854, for the sum of $1966.03, and interest, upon which are the following endorsements, viz.: June 3d, 1854, $155; April 1st, 1855, $107.90; April 1st, 1855, $357.22;— which said mortgages are assigned to me as collateral security for the payment of the following described promissory notes, viz.: Moore & Durfee's note, dated August 15th, 1855, for $500, at seven months, with interest at ten per cent.; Moore & Durfee's note, dated September 10th, 1855, at six months, for $500, with interest at ten per cent.; Moore & Durfee's note, dated September 29th, 1855, at six months, for $500, with interest at ten per cent.; Moore & Durfee's three several notes, each for $600, dated November 14th, 1855, at six, nine and twelve months respectively, with interest at ten per cent. semi-annually; and Benjamin C. Durfee's note, dated November 14th 1855, at one year, for $1400, with interest at the rate of ten per cent. payable semi-annually. In case any of said notes should not be paid, said mortgages to be collected at the expense of assignors, and applied."

"JAMES McCLURG."

The assignment to defendant of the mortgage in question, by complainant jointly with her husband, was also put in evidence.

On the hearing in the court below, a decree was rendered dismissing the bill, and complainant appealed.

*J. E. Bigelow*, and *H. T. Backus*, for complainant.
*E. C. Walker*, for defendant.

MANNING J.:

On the 14th November, 1855, and previous thereto, Benjamin C. Durfee, complainant's husband, and one Moore, were partners in trade under the name of Moore & Durfee, and the firm was indebted to defendant in the sum of fifteen hundred dollars, for which amount he held the notes of the firm. He also held three other promissory notes of the firm, given on that day, for six hundred dollars each, payable in six, nine, and twelve months, with interest at ten per cent. On the same day, two mortgages were assigned to defendant, both given by one Berry—one to complainant for eighteen hundred dollars, and assigned by her and her husband to defendant; and the other to her husband for nineteen hundred dollars and odd, and assigned by him to defendant. The mortgages bore even date, and one or more payments had been made on each. Both assignments were absolute on their face. The mortgages and assignments were delivered to defendant by complainant's husband, and defendant at the same time gave to him a receipt describing the mortgages, and stating defendant had received them of Benjamin C. Durfee, as collateral security for the payment of the aforesaid notes of Moore & Durfee, and of an individual debt Durfee was owing defendant. By a subsequent agreement, made in May or June, 1856, between Moore, Durfee, and defendant, the latter purchased Durfee's interest in the co-partnership; and in the settlement then made between the three, the notes of the firm and the individual debt of Durfee were paid, and the mortgages were transferred to defendant.

Complainant files her bill for a re-assignment to her of the eighteen hundred dollar mortgage, and for all payments made on it to defendant, stating in her bill that the mortgage was assigned by her to defendant as collateral security for the

payment of the aforesaid notes of Moore & Durfee, and the individual debt of her husband, and that the notes and debt had been paid.

There is nothing on the face of the mortgage, assignment, or receipt, nor is there any parol testimony, showing complainant was a party or actor in any of the transactions between defendant, and Moore, and her husband, Benjamin C. Durfee, unless the assignment of the mortgage by her and her husband to defendant is to be regarded in that light. The assignment, it is to be observed, is absolute on its face; and the receipt given by defendant is to her husband, and not to her, and does not mention her name, except in describing the mortgage and assignment in the body of it. If the receipt had been made to her, or to her and her husband, the case would be altogether different. It would show she was a party to the delivery of the mortgage and assignment to defendant, and that she had not parted with her interest in the mortgage to her husband, and at his request assigned it to defendant.

If she did not intend he should have the absolute disposal of the mortgage, she should have made the assignment conditional, or had the receipt taken in her own name. From the facts before us, we can not say the assignment was intended by her as security only, and that there was no intention to part with her interest in the mortgage, to her husband, unless it be a legal inference to be drawn from the circumstance of the mortgage having belonged to her before the assignment. The law draws no such inference.

She was not present when the mortgage and assignment were delivered, nor does it appear there was any negotiation between her and defendant as to the mortgage or its assignment, or that her husband was acting in her behalf, or as her attorney, or not solely for himself. As her agent, the assignment would be equivalent to a power of attorney authorizing him to sell the mortgage to defendant; and any instructions given him to the contrary, unless brought home to the knowledge of defendant, would not affect him. The

great difficulty is, there is no evidence the assignment was intended by the wife to be conditional.

Real and personal property belonging to a married woman may be " contracted, sold, transferred, mortgaged, conveyed, devised, or bequeathed by her, in the same manner and with the like effect as if she were unmarried." — *Comp. L. p.* 966, § 3292.

The reason why complainant's husband joined in the assignment, probably, was that the statute (*Comp. L. p.* 965, § 3289), before it was amended, in February, 1855, required the husband to give his consent to all transfers made by the wife of her individual property, and the parties, most likely, were not aware, at the time, of the alteration in the law. Since the amendment, we think, we should treat all contracts of sale by married women as we would were they made by a *feme sole*. If complainant had been unmarried, there would be nothing in the case showing she did not intend, by assigning the mortgage, and delivering it and the assignment to Durfee, to give him the absolute control and disposition of it, and we see no reason why her rights should be placed on any different footing on account of her coverture.

We should not, without some evidence at least, presume her husband has deceived her; and even if he has (we *suppose* the case, for there is no charge of the kind), inasmuch as she has, by her own act, enabled him, not only to deceive her but defendant, she, instead of defendant, should be the sufferer.

It was said on the argument, the answer admits the assignment was made by complainant as security.

The bill waived an answer on oath, and a replication was filed. When no replication is filed, the answer is received as true, and is evidence. When a replication is filed, it is not evidence, but complainant may use it as an admission by defendant of a fact necessary to establish his case. He can not, however, use a part of the answer, and exclude other parts relating to the same subject that would be responsive to the bill had the answer been under oath.

In the answer, defendant admits "complainant, jointly with her husband, did make, execute, and *deliver* to him an assignment of the mortgage as "collateral security." Here is an admission that the assignment was *delivered* to defendant, by *complainant* and her husband, as security. Defendant means nothing of the kind, as is evident from other parts of his answer. A few lines lower down, after describing the mortgage, and debts to be secured by it, the answer says: "But whether said assignment was made by complainant at the request of said Benjamin C. Durfee, or not, the defendant has no knowledge, and can not state. But he avers he never saw said complainant, or ever transacted any business with her." A little lower down still, the answer says: "That he had no privity of contract, of any kind, with complainant, and knew not then, and knows not now, what were her rights or interests in said mortgage, or what induced her to join her husband (the said Benjamin) in assigning the same to him."

The decree of the court below must be affirmed, with costs.

MARTIN Ch. J. concurred.

CHRISTIANCY J.:

I am unable to agree in the opinion of my brethren in this case. I do not, however, propose to discuss the case at large, but to state the points on which I differ, and briefly to indicate the grounds of that difference.

I agree with my brethren in holding that, under the statute of 1855 (*Comp. L.* §§ 3292 *to* 3296), we are to treat the transactions disclosed by the case, and the rights of complainant growing out of them, as if she were a *feme sole;* with this qualification, that I am not prepared to admit the competency of the wife to contract directly with her husband, or to sell her mortgage to him.—See *Graham v. Van Wyck*, 14 *Barb.* 531. I agree with them, also, in supposing that the

reason why the husband joined in the assignment of the wife's mortgage, was either that the parties were not aware of the recent alteration of the law, which rendered it unnecessary, or that they were doubtful of the effect of the alteration. In either case, however, I think the fact of his having joined in the assignment, wholly immaterial, neither adding to, nor detracting from, the effect of the assignment; and that the rights of the parties stand exactly upon the same footing as if the assignment had been executed by her alone.

But, though the assignment was absolute on its face, yet the bill, answer, and proof all show it to have been made only as security for the payment of certain notes of Durfee, and Moore & Durfee; and there is not a pretence or suggestion on the part of the defendant that the assignment was made or delivered to him for any other purpose. The answer not only clearly and distinctly admits this, but shows that it was in pursuance of a previously proposed arrangement between defendant and Durfee, and that the latter "offered to procure the assignment for his (defendant's) *security*." The answer and the proof clearly showing that this assignment was so made and delivered, as and for the security of the notes mentioned, I am at a loss to perceive how, in a court of equity, as between complainant and defendant (assignor and assignee), it can be supposed to give to the latter any greater rights in or over the mortgage, than if it had distinctly declared, upon its face, that it was given as such security only. The effect between them, as to all beneficial or substantial interest in the mortgage, is, I think, precisely the same as if so expressed.

The defendant had full notice by the mortgage itself, as well as by the assignment, that the mortgage was the property of complainant, and not of her husband. There was nothing on the face of the papers, or in the nature of the transaction, to warrant any inference on his part that she had sold the mortgage to her husband (if it were compe-

tent for her to do so), or given him power to sell it. It was not assigned to the husband, nor was the title in any way vested in him. The assignment was directly to the defendant himself. Had it been assigned to her husband, so as to vest him with the title, or had it been a certificate of stock, or negotiable paper, endorsed in blank, the possession of the husband would have been *prima facie* evidence of ownership, and the defendant would have been justified in dealing with him as the owner. It was claimed, on the argument, that the case might be placed upon this ground, as the mortgage discloses the fact that it was given to secure a note. But the answer to this suggestion is, that it does not appear whether the note was negotiable; and the answer of defendant sets up no such claim, but claims the mortgage under the assignment only, and the subsequent arrangement with the husband. My brethren seem to me to view this case as if complainant had vested her husband with the *indicia* of ownership, so as to authorize the defendant to deal with him as the owner. If I could so understand the fact, I should agree in their conclusions. But the mere placing the mortgage in the hands of the husband, with an assignment of it to the defendant, and for the purpose of delivery to the defendant, was not, it seems to me, vesting her husband with any *indicia* of ownership, especially when it was distinctly understood, by defendant, that he was receiving it only as security—a purpose entirely consistent with her continued general ownership. The *indicia* of ownership were given to the defendant, not to the husband, as security only, and not as a sale. It is fair to presume, and the defendant had a right to infer, that complainant had been informed of the proposed arrangement between himself and the husband, by which the husband undertook to procure the assignment as security; and had that arrangement or understanding been for the sale of the mortgage, doubtless the production, and delivery by the husband to him, of the assignment in this absolute form, would have given him the

right to infer that she had been informed that the purpose of the assignment was a sale. But when the proposed arrangement between him and the husband was for a transfer only to secure the payment of certain notes, and he received it only as such security, he had no right to infer, and no court, I think, can infer, that she had assented to an absolute sale, as she could not have been informed that such was its purpose, unless the information was false. She assented to the arrangement actually proposed, and not to one which was not proposed, and had not been thought of. This assignment created, of itself, a privity of contract between complainant and defendant, as much as if she had been present and transacted the business in person. The denial of such privity of contract in the answer, is merely a denial of the legal effect, or of an inference of law.

The legal effect of the transaction by which this mortgage was assigned and delivered to the defendant, and received by him, is, I think, in a court of equity, a contract between him and complainant, that he might hold the mortgage as a security for the notes (which it was assigned to secure); that if those notes were not paid by the parties liable on them, as they became due, he might collect and apply the mortgage money for that purpose, so far as it would extend, and so far as necessary; but if the notes should be paid, or extinguished, by the parties liable on them, the mortgage should revert to her; that he, in that event, would re-assign it to her; and that after payment, and until such re-assignment, he would hold it as a mere naked trustee for her, and that if he had, in the mean time, received any payments upon it, he should account to her for the amount.

But it seems to be supposed that the receipt given by defendant for the mortgage and assignment, being given to complainant's husband and not to herself, alters the effect of the transaction, and prevents its enuring to her benefit. I think it entirely immaterial to whom the receipt was given, or whether any receipt had been given; and if given to any

other person, it could not have the effect to prejudice complainant's rights as between her and defendant. — *Vartie v. Underwood*, 18 *Barb.* 561. The mortgage was hers; she assigned it to defendant as security; he knew and acknowledged the fact; he can not claim it as a sale. Subject only to his right or special property in it, as a security, the general property and beneficial interest in it, in equity, still belonged to her. — *Henry v. Davis*, 7 *Johns. Ch.* 40; *Slee v. Manhattan Co.* 1 *Paige*, 48; *Hoyt v. Martense*, 16 *N. Y.* 231 ; *Norton v. Warner*, 3 *Edw.* 106. He was not the general owner, and could not transfer to another person, having notice, any greater right than he possessed. — *Sweet v. Van Wyck*, 3 *Barb. Ch.* 647; nor, as between himself and her, could he make any transfer of it to the prejudice of her rights, or which should prevent her from obtaining the full benefit of the mortgage when his debt should be paid ; nor could he, by this receipt, or any other arrangement with the husband, transfer to the husband *her* right. When the mortgage and assignment were delivered to, and accepted by, defendant as security, the transaction, so far as complainant was concerned, was complete, and the respective rights of the parties became fixed. There was nothing left to be done by the husband, except to see to the payment of his and Moore & Durfee's notes, and nothing from which to infer any authority in the husband, at some future period, to make a new and entirely different arrangement, or to alter the effect of that already made, so as to prejudice her interests ;—in short, to make an absolute sale of the mortgage which she had only consented to transfer as a security. The same unequivocal evidence of her assent was necessary to give validity to the new arrangement, as was required to perfect the first. She stood, in fact, so far as this mortgage was concerned, in the relation of a surety for the notes of her husband and of those of Moore & Durfee. — *VanHorne v. Everson*, 13 *Barb.* 526 ; *Vartie v. Underwood*, 18 *Barb.* 561.

By the sale to defendant of Durfee's interest in the firm

of Moore & Durfee, in May, 1856, the notes of Durfee and Moore & Durfee, secured by the assignment, were, as between complainant and defendant, paid or extinguished, and every purpose of the assignment had been fulfilled.    From that moment all interest of defendant in the mortgage ceased, and it belonged, in equity, to complainant as fully and completely as if the assignment had never been executed.

The assignment was not a power of attorney to the husband, but, so far as it was in the nature of a power, it was a special power given to the defendant, to secure the payment of the notes in question; and when these notes were paid, that power was extinguished by the extinguishment of the debt secured by it.

I can see no evidence in this case to warrant the inference of complainant's assent to the new arrangement, by which defendant claims to own the mortgage, unless, to every disposition a husband may choose to make of his wife's property, her assent is to be inferred from the marital relation alone.    But this, so far from treating the wife as a *feme sole* in respect to her separate property, according to the plain intent of the statute, would practically nullify the statute, and place the property of the wife under the unrestrained control of the husband.

It is unnecessary to discuss the question, what would have been the effect, if the answer, as respects the chattel mortgage, had been fully supported by the proof, so as to show it to have been given for the specific purpose of securing the wife for having assigned her mortgage as security; since the evidence does not support the answer in this respect. The answer alleges it to have been a mortgage of Moore & Durfee, of the same date and for the same amount of the mortgage assigned.    The evidence, so far as it shows any thing upon the point, would make it a mortgage of Durfee alone, and does not show either its date or amount, or the purpose for which it was executed, or, if intended to show either, it leaves it to the loosest possible inference; and even

this inference, so far at least as to the purposes of its execution, is entirely destroyed by the statement of the witness, on his cross - examination, that he "knew nothing about the chattel mortgage, except from seeing it on the files and from hearsay. This evidence is entirely too vague and uncertain to affect the rights of the complainant, or to furnish any safe ground of decision. Neither the mortgage itself nor its contents are proved. Better evidence must have been in the defendant's power. Why was not Moore called as a witness, who must have known by whom and for what purpose it was executed, if the facts were such as stated in the answer.

The answer alleges the agreement of the defendant, on the purchase of the stock, to have been to pay to the *complainant* the amount of this *chattel mortgage;* the proof is that he was to pay to *Durfee* the amount of the *mortgage* he had procured his *wife to assign.* If the chattel mortgage is properly in evidence at all, there is nothing in the evidence from which we can safely infer it was given to secure her for the assignment of her mortgage. We may as well infer that it was given for some other debt.

There is not a word of testimony to show that complainant ever received or assented to the assignment, from the defendant to her, of the mortgage from Berry to her husband.

I think the decree of the court below should be reversed, and a decree entered in favor of complainant according to the prayer of the bill.

CAMPBELL J. did not sit in this case.

*Decree affirmed.*