ENOS R. JENNE v. EMILY U. MARBLE.

*Wife's Personal Covenant to Pay Rent to her Husband—Married Women's Contracts—Comp. L., §§ 4803-7.*

A man leased to his wife certain farms, including the family homestead, for a rent that could not be apportioned, and sold her certain animals that were used on the homestead without so distinguishing them as to take them out of the homestead exemption. The lease contained clauses of eviction. The wife's contract to pay was executory, and she bound herself by her personal covenant. *Held*, that it could not be enforced by an action at the common law.

A husband cannot sue his wife at law or in equity to enforce a purely executory contract.

At common law the husband as well as the wife was disabled from entering into a mutual contract. The same rule held in equity, except in regard to separate estates, and it applied in a measure to them.

It is the ruling English doctrine that a court of equity will usually sanction a wife's transfer to her husband of her separate property or its income, if not objectionable and if made for a valuable consideration, and that a wife's disposition of her separate property is in execution of a power of appointment, and not an ordinary personal contract; it was never held that an obligation against her under such dealings could be enforced beyond the separate estate to which they referred.

It has never been held in Michigan that husband and wife may contract with each other generally, nor make contracts enforceable at law that could not formerly have been enforced in equity concerning her separate estate.

The Married Woman's Act of 1855 (Comp. L., §§ 4803-7) does not abrogate all of the common law or of previous statutes restraining married women from contracting, nor profess to change the powers of husband and wife to deal with each other, except so far as such a change is implied. It gives the wife no power to contract except in regard to her separate property.

In Michigan a married woman may contract for the purchase of property and make gifts and transfers to her husband, and since the Married Woman's Act (Comp. L., §§ 4803-7) she may receive a gift of land directly from him.

A married woman cannot make a mere personal obligation not connected with nor charging property, nor bind herself by

mere personal promise jointly with her husband or as his surety.

Where a husband gets the advantage in a bargain with his wife, no great positive evidence is needed to establish its invalidity.

The law does not intend any rule that will tend to destroy the value and confidence of the marital relation.

Married persons cannot, without mutual consent, testify to the circumstances of any transaction privately entered into between themselves.

Error to Ingham.    Submitted April 12.    Decided Oct. 16.

ASSUMPSIT.    The facts are in the opinion.

*M. V. & R. A. Montgomery* (on brief) for plaintiff in error.    A married woman's contracts of sale are to be treated under Michigan statutes as if made by a *feme sole, Durfee v. McClurg*, 6 Mich., 223; she may give property to her husband (*Penniman v. Perce*, 6 Mich., 525) or deed to him, and he may bargain with her for her property, *Stiles v. Stiles*, 14 Mich., 75.    The husband may deed to his wife, and the wife may acquire any amount of property directly from her husband and hold it as her sole property, *Tillman v. Shackleton*, 15 Mich., 447.    A wife may carry on business as if she were unmarried (*Rankin v. West*, 25 Mich., 196) and may make herself liable for purchases on credit. *Campbell v. White*, 22 Mich., 178.

*Dart & Shields* (on Shields' brief) for defendant in error, as to the common law disability of married persons to contract with each other, cited Tyler on Infancy and Coverture, 320, and *Marshall v. Rutton*, 8 T. R., 545.    The Married Woman's Act of 1855 did not give wives power to make contracts generally, but only as to their own property (*West v. Laraway*, 28 Mich., 465), and it does not remove the husband's disability, *White v. Wagar*, 25 N. Y., 333; *Snyder v. People*, 26 Mich., 108; *Lord v. Parker*, 3 Allen, 129; *Edwards v. Stevens*, Id., 315; *Hoker v. Boggs*, 63 Ill., 161.    It is held in other states that under similar statutes the husband and wife have no more right to

contract with each other than at common law. *Chapman v. Kellogg,* 102 Mass., 246; *Ingham v. White,* 4 Allen, 412; *Smith v. Gorman,* 41 Me., 405; *Pike v. Baker,* 53 Ill., 163; *Longendyke v. Longendyke,* 44 Barb., 366.

CAMPBELL, J. This is an action at law by the assignee of a husband against his wife on personal covenants for the payment of rent on a lease from the husband to the wife, and for the value of certain farm live stock claimed to have been sold to her.

The lease, dated July 10, 1874, leased two farms—one on shares, and one, which included a legal homestead and some additional land, for $260 a year and taxes. The lease, which was in the ordinary form used for farming leases, contained personal covenants, and clauses of eviction on default.

The court below held that the transaction was not such as to create a valid right of action for the husband against the wife, as not warranted by the statutes.

Under our statutes, a wife has no power to contract except in regard to her separate property. The present contract if valid, is made so because the leasehold interest for which she bargained could be so regarded, and also the personal property which it is claimed she purchased.

The case before us is without any clear precedent, and must depend upon whether it is covered by principles which have been determined.

It has been held that a contract for the purchase of property may be lawfully made by a married woman, the procurement of property which she is to own being equivalent to the creation of a separate interest. *Tillman v. Shackleton,* 15 Mich., 447; *Campbell v. White,* 22 Mich., 178; *Powers v. Russell,* 26 Mich., 179; *Rankin v. West,* 25 Mich., 196.

The constitution and statutes are clear against her right to make a mere personal obligation unconnected with property, and not charging it; so that she cannot become personally bound jointly with her husband, nor as a surety, by mere personal promise. *De Vries v. Conklin,* 22 Mich.,

255; *West v. Laraway*, 28 Mich., 464; *Emery v. Lord*, 26 Mich., 431.

She may receive a gift of land directly from her husband as the statutes now stand, *Burdeno v. Amperse*, 14 Mich., 94; but she could not do so until the statute of 1855 gave her enlarged powers of contracting. *Ransom v. Ransom*, 30 Mich., 328. She may also make gifts and transfers to her husband. *Penniman v. Perce*, 9 Mich., 509; *Durfee v. McClurg*, 6 Mich., 223.

But the law has not disregarded the fact that marital influence places married persons in different relations from others, and prevents their dealings from being governed by the same rules which usually require others to abide by bargains not tainted with distinct evidences of fraud and misconduct. Where a husband gets the advantage, it requires no great positive evidence to establish the invalidity of his bargain. *Witbeck v. Witbeck*, 25 Mich., 439; *Wales v. Newbould*, 9 Mich., 45; *Stiles v. Stiles*, 14 Mich., 72.

It is not the purpose of the law to create any rule which will tend to destroy the value and confidence of the marital relation. *Snyder v. People*, 26 Mich., 106. The statutes have made it impossible for married persons to deal on the same footing with others, by preventing either from testifying against the other without mutual consent, or from divulging their mutual conversations not made in public. It is impossible, therefore, for either to explain any transaction and its circumstances, as it might be done among strangers.

Inasmuch as the wife's power of contracting is special and not general, we can only get light on it from the doctrines which have been enforced. At common law there were mutual disabilities—husbands not being able to act. any more than their wives, in mutual contracts. The man as well as the woman was under disability. The same rule applied in equity, except in regard to separate estates, and to some extent as to those. It is important to understand the peculiar elements of the agreement here sued upon, in order to know the bearings of the rules which have been considered in other cases.

In the first place the agreement is one intended to be enforced by an ordinary action at common law and not in equity, and such an action is brought here.

In the next place it is executory entirely on the part of the wife, involving no present transfer or charge of her property, or any of it.

In the third place it requires her to pay rent, incapable of being apportioned, upon the farm on which the family at the time resided, and where she was entitled to live and be supported; and includes within that farm a legal homestead over which her husband or his creditors could under no] circumstances exercise dominion which would interfere with her right of possession, and it confers a right of eviction for any default in payment of rent.

In the fourth place it either contemplates a separation which no court of law would enforce, or else it compels her to pay rent for property jointly occupied with her husband as a home, in which he was legally bound to maintain her.

And lastly, as regards the personal property, it consisted of animals used on the homestead, most of which were exempt from execution and incapable of being disposed of by the husband without the wife's consent, and liable if so interfered with to be replevied by her, and none of which had been so distinguished as to take them out of the exemption.

The act of 1855 before referred to, does not, as already suggested, abrogate all of the common law or of the statutes restraining married women from contracting, and it does not profess to change the powers of husband and wife to deal with each other, except so far as such a change is implied. So far as it fairly extends it does so operate, in some important particulars as held by this court heretofore.

But we have not held, thus far, that husband and wife may contract with each other generally, nor has it been heretofore decided that they could now make contracts enforceable at law, which could not have been enforced in equity formerly concerning a wife's separate estate.

In equity a wife's transfer of her separate property or its income to her husband might be valid, and would, if not objectionable, be sanctioned by a court of equity; and it was usually sanctioned if made for a valuable consideration, or if proper under the circumstances. This doctrine somewhat reluctantly recognized by Lord Thurlow in *Pybus v. Smith*, 1 Ves., Jr., 189, is the ruling English doctrine, and was followed in *Methodist Ep. Church v. Jaques*, 3 J. C. R., 77. In the Court of Errors, 17 J. R., 548, the doctrines laid down indicated that the power to deal with separate property under settlement was presumptively absolute, while the chancellor, whose opinion has been more approved in the United States, regarded the settlement as furnishing the measure of authority, and not the limitation. Upon the general doctrine see cases collected in notes to *Pybus v. Smith*, 1 Hov. Supplement 67; 2 Kent's Com., 162, *et seq.* and notes; 1 Leading Cases in Equity, 394, and notes, English and American, to *Hulme v. Tenant*. These distinctions are not important under our statutes which give all the power that would have been possible under any settlement.

All of the cases, however, rest upon the doctrine that the act of the wife is the execution of a power of appointment, and not an ordinary personal contract. It was never held that under any such dealings an obligation could be enforced beyond the separate estate referred to; and the broad statements that the wife could contract as if sole concerning her separate estate were uniformly and invariably understood in that way, and in all cases the court exercised the power of considering the propriety of the arrangement when made with the husband, which it could not have done if there had been any power of contracting in the general and unqualified sense. And we have found nothing authorizing the inference that a husband could sue a wife at law or in equity to enforce a purely executory contract. The case of *Livingston v. Livingston*, 2 J. C. R., 537, comes nearer to it, apparently, than the other cases, but it sustains no such doctrine, although the language alone might seem to warrant it. There, in pursuance of a mutual.

understanding, a husband agreed to purchase a lot and improve it, and have title made to his wife, and that another house and lot belonging to her should be disposed of to pay for it. After his wife's death he filed a bill to establish a resulting trust in his own favor as having furnished the means whereby the property was procured to be taken in her name, claiming that the agreement had failed, and that the money not being intended as an advancement, he was in equity to be protected. This occurred before the statutes abolished resulting trusts in favor of those who paid the purchase money of property conveyed to others. The bill, instead of seeking to enforce the contract, treated it as void.

The court recognizing the equity, regarded the fulfillment of the contract as more beneficial to the infant trustees, and decreed that the money be raised by sale of the original house and lot instead of the one purchased, as in case of resulting trust the complainant was entitled to the latter absolutely, and he had only desired to receive back his money. If he had insisted on his strict rights he would undoubtedly have procured them. The case was not so framed as to go upon the contract as a ground of relief. In *Milnes v. Busk*, 2 Ves. Jr., 488, it is emphatically denied that husbands and wives may contract as other persons can concerning the wife's separate estate.

If we hold that the contract before us is valid we must do so upon the ground that husbands and wives can contract with each other just as freely as strangers can, and may sue each other just as freely at law or in equity. No ground short of this can maintain this action. We think the statutes have not gone far enough to allow this, and that, so far as husbands and wives are concerned, they cannot contract with each other in any larger sense than they could formerly in equity, except that their contracts when valid may be enforced at law where legal in form. Unless impliedly repealed there can be no question as to the disability under the whole code of statutes prior to the law of 1855, and the language of that statute is no broader than the equitable rules concerning separate property laid down

in the same words in most of the old decisions. The language is borrowed almost if not quite *verbatim* from the decisions of Lord Thurlow and Chancellor Kent. The disabilities of testimony are entirely inconsistent with the idea that a husband and wife may deal with each other as third persons can. This is impossible if they cannot testify concerning their contracts. And when the law recognizes, as it always has done, the peculiar power of substantial coercion possessed by husbands over wives, it would not be proper to infer any legal intent to remove protection against such influence from any vague provisions which no one supposes were ever actually designed to reach such a result, and which can only be made to do it by an extended construction. Any one can readily see the mischiefs of allowing persons thus related to put themselves habitually in business antagonism, and legislation which can be construed as permitting it is so radically opposed to the system which is found embodied in our statutes generally, that it should be plain enough to admit of no other meaning.

It is very questionable whether—apart from personal disqualifications,—the terms of these contracts would not create difficulties as to their enforcement by suit upon the money covenants, which include exempt property. But this question is one of less consequence, and need not be considered.

The judgment should be affirmed with costs.

The other Justices concurred.