ELISHA H. DAKIN v. HARRIET DAKIN ET AL.

*Husband and wife—Release of dower—Specific performance—Will—Equity jurisdiction.*

1. A contract by which a wife releases her dower to her husband, in consideration of the conveyance to her by him of property, is valid.

2. Where in consideration of the execution of a deed of real estate and the assignment of a mortgage by a husband to his wife, and his promise to give her a certain portion of his remaining estate by his will, she agrees to accept the land, mortgage, and bequest in full of all claims of dower, or otherwise, against his estate, and the bequest is made, and paid to the wife after her husband's death, and she claims a share of the estate not disposed of by the will, she should be required to perform her contract by accepting the land, mortgage, and bequest in lieu of other claims against the estate, and to forbear asserting to the contrary in the probate court, or to surrender or account for what she has received under the contract.

3. The right to such performance or surrender inures to the executor of the will, and to every person affected by the failure of the wife to carry out her agreement; and, if the executor declines to move in the matter, the parties in interest may do so, and the remedy should be pursued in the equity and not in the probate court.

. Appeal from Ingham. (Person, J.) Argued June 16, 1893. Decided October 27, 1893.

Bill for the specific performance of a contract and the construction of a will. Complainant appeals. Decree reversed. The facts are stated in the opinion.

*Ellis, Nichols & Miller,* for complainant.

*Cahill & Ostrander* and *M. D. Chatterton,* for defendant Harriet Dakin.

*Q. A. Smith,* for defendants Wixon and Beardsley, executors.

HOOKER, C. J. This case being here upon demurrer, the allegations of the bill must be taken as true.

A wife, in consideration of a present deed of real estate worth $10,000, and an assignment of a mortgage upon other real estate worth $10,000, and the promise of her husband to give her $40,000 of his estate by will, agreed with him to accept these in full of all claims of dower, or otherwise, against his estate. The husband accordingly made his will, whereby she has received the sum of $40,000 from his estate. The estate exceeds the amount disposed of by the will, and the wife now claims one-half of the excess, as her distributive share under the statute. The complainant is one of the heirs of the deceased, and interested in the residue of the estate, as one entitled to a share of the same. The widow and the executors demur to the bill, which prays a specific performance of the contract, a construction of the will, and other relief.

The defendants assert that equity has no jurisdiction to enforce the contract, because it is void; that the will needs no construction, because its meaning is clear upon its face, and because all of its provisions have been carried out by consent of the parties; and that, if the will required con-

struction, the probate court has entered upon the settlement of this estate, and equity cannot interfere with it, but must allow the cause to come to the circuit by appeal from the probate court, if its decision upon the rights of the parties is not satisfactory.

Two questions arise upon the record:

1. Can specific performance or other relief be decreed, under this bill, against the widow upon the contract?
2. If not, has a court of equity the power to construe this will by the light of the contract, and restrain the executors from paying or the widow from receiving a distributive share of the residue?

Upon the admitted facts, the widow has received $20,000 conveyed to her, and $40,000 which was willed to her by the testator, in consideration of her promise to accept it in lieu of her dower and all claims against the estate. Upon her part the contract was wholly executory when made. On the part of her husband it has been fully performed. Were the contracting parties not husband and wife, and had the consideration been a promise to pay money, performance by the grantor would have taken the case out of the statute of frauds, and equity could specifically enforce it. But counsel contend that this cannot be done, because the wife had not the capacity to make a contract with her husband, and could not bind herself by her promise to accept this property in lieu of dower and other claims.

We think that a contract whereby a wife releases her dower to her husband, in consideration of the conveyance to her of property from him, is valid. It has been so held repeatedly. Such release, whether to her husband, or by joining with him in a deed, or by election to take a bequest under his will, has been held a sufficient consideration for the conveyance of land and for such bequests, even against creditors, where the element of fraud is

absent. *Farwell v. Johnston,* 34 Mich. 342; *Bissell v. Taylor,* 41 Id. 702. It is contended that such contracts are permitted only when a separation of the parties is involved, and, while no authority for such position is presented to us, the claim is made that all Michigan cases, at least, bearing upon this question were such. However this may be, the case of *Randall v. Randall,* 37 Mich. 563, determined that the right was of such a nature that the wife, by deeding directly to the husband, might work an equitable sale of it, whereby to furnish a consideration capable of upholding a grant to herself; while the case of *Rhoades v. Davis,* 51 Mich. 306, 309, unqualifiedly plants the right of the wife to release her dower upon the married woman's act of 1855, and that, too, in a case of ejectment. That case would seem to establish the proposition that a wife and her husband may make contracts with each other for the purchase and sale of property. It is not a new rule that husband and wife may contract with each other in relation to the separate estate of the wife, and no statute is required to make such a contract binding in equity, where the contract is executed. A purely executory contract may stand upon a different footing. *Jenne v. Marble,* 37 Mich. 319.

Story says:

"If a wife, having a separate estate, should *bona fide* enter into a contract with her husband to make him a certain allowance out of the income of such separate estate for a reasonable consideration, the contract, although void at law, would be held obligatory and would be enforced in equity." 2 Story, Eq. Jur. § 1372; *More v. Freeman,* Bunb. 205.

In the case of *Livingston v. Livingston,* 2 Johns. Ch. 537, a husband and wife had agreed, for a *bona fide* and valuable consideration, that the husband should purchase land and build a house thereon for her, and that she should pay him therefor out of the proceeds of her own real

estate. The husband performed his part of the agreement, which was specifically enforced against the heirs of his wife.

If, then, a wife may purchase land, and may sell her right of dower, and convey it by a release to her husband, he holding the title to the lands, and if a release of dower is a valuable and valid consideration, and if a deed from the husband to the wife is valid, it would seem that the only support left for the claim that this was an invalid contract is the fact that it was not executed by her when made, by the release of her interest in her husband's estate. The case of *Jenne v. Marble*, 37 Mich. 319, was a case at law. It goes no further than to hold that a husband cannot sue his wife at law or in equity to enforce a purely executory contract. The case recognizes the jurisdiction of equity in matters of contract between husband and wife in relation to her separate estate. But this is not a purely executory contract, being wholly performed by the husband, and the cases referred to above were similar, the husband having performed, while the wife had not.

. It may be suggested that there is something about the right of dower, and the wife's interest in the estate of the husband, that cannot be affected by a promise to convey or not to claim her rights, or that an election cannot be made by her during coverture. Such a doctrine may be found (see 1 Bish. Mar. Wom. § 433), and the reason there given is the want of a disposing power during coverture. But this author recognizes the principle that, after her husband's death, she may be put to her election to take the provision that she has received or that is made for her by will, or to relinquish it. She cannot have both such provision and what the law would give her in the absence of such contract or provision. But the Michigan cases hold that her power to release during coverture by

deed to her husband exists by virtue of the law of 1855. If so, it must be for the reason that such law has given to her the disposing power, which, under the authorities mentioned, she formerly lacked; and, if it has given her the power to dispose of it, it may be argued that her contract to do so is valid,—a point we do not decide. At all events, she may be required to elect. In this case the claim is made that the wife acquired property upon a promise which it is now within her power to perform, and which equitably she should perform. The right to such performance or a surrender of what she has received under the contract inures to the executor, and to every person affected by her failure to carry out her agreement. All distributees are affected, and, if the executor declines to move in the matter, the parties in interest certainly have a remedy. If this bill truly states the facts, this widow should be required to perform her contract by accepting these things in lieu of other claims, and to forbear asserting to the contrary in the probate court, or to surrender or account for what she has received.

The right to a specific performance of this contract is not a question for the probate court. If we admit that, upon the hearing of an application for distribution, the court could settle rights arising upon contract between the distributees, or between one or more of them and third parties,—a question we do not determine,—the fact remains that this contract is void under the statute of frauds, except as a court of equity may sustain it under the doctrine of part performance. Furthermore, no discretion is lodged in the probate court to determine whether this contract is conscionable or unconscionable, or whether justice and equity will demand its specific performance or some other relief, all of which questions are within the jurisdiction of a court of chancery. Whether the decree

97 MICH.—19.

would properly attempt an interference with the fund in the hands of the officer of the probate court, or merely determine the rights of the parties, restraining the widow from the prosecution of her claim if necessary, we need not determine. Furthermore, it has been intimated that, if the allegations of this bill are true, it would be grossly inequitable to permit this widow to retain the property received under this contract, and repudiate the portion which she had promised to perform. The probate court has no power to deal with this subject, while a court of chancery has.

A further question may be involved in this case, which, upon a hearing upon the merits, may have an important bearing. That is the construction of the will. While existing contracts survive, the testator had the right and power to give to his wife what he chose. No obligation rested upon him to insist upon the performance of her contract, and he could doubtless deprive his representative of such right. If he chose to make these transfers and bequest upon the condition that they be accepted in lieu of dower merely, he could do so; and, if such intention can fairly be gathered from his will, it might be decisive upon the question of specific performance. The will, therefore, may have to be construed in determining the other question. If, however, from the will itself, as set up, and the facts alleged, we can say, as matter of law, that such is the effect of the will, the demurrers should be sustained, and the case affirmed. In order to determine this question, the first clause of the will must be construed. It reads as follows:

"I, John B. Dakin, of the village of Williamston, of the county of Ingham, and State of Michigan, do make and publish this as and for my last will and testament:

"I bequest:

"*First.* I give and devise to my wife, Harriet Dakin,

$40,000, to be selected by her from my estate in and from anything she may see fit to select to the amount of $40,000; also all household goods, or all the goods the house may contain, of whatsoever name or nature, at the time of my decease, and all the personal property that the barn or yard may contain, provided the house, barn, and yard goods shall not invoice above $5,000 at the time of my decease; all the above to be in lieu of the right of dower in and to my estate, as the house and lot above named was deeded by me some time since to Harriet Dakin, and not yet recorded."

This provides that the bequest shall be in lieu of the right of dower in and to his estate (not his lands). He adds: "As the house and lot above named was deeded by me some time since to Harriet Dakin, and not yet recorded." The language "right of dower in my estate" is claimed to be broader than the term "right of dower," or "right of dower in my lands," and it is asserted that, to give any effect to the words "in my estate," the language must be held to mean that the bequest and deed are to be in lieu of all interest in the estate. Authorities are not wanting to sustain this contention. See *Dilson v. Dilson*, 52 N. W. Rep. (Iowa) 203; *Adamson v. Ayres*, 5 N. J. Eq. 352. The intention of the testator is what must settle this question, and innumerable authorities establish the proposition that the concurrent circumstances under which a testator makes a will are to be considered in determining the intent, where there is room for doubt.

In *Reed v. Insurance Co.*, 95 U. S. 23, 30, in construing a policy of insurance, Mr. Justice Bradley says:

"Although a written agreement cannot be varied (by addition or subtraction) by proof of the circumstances out of which it grew and which surrounded its adoption, yet such circumstances are constantly resorted to for the purpose of ascertaining the subject-matter, and the standpoint of the parties in relation thereto. * * * A reference to the actual condition of things at the time, as they appeared to the parties themselves, is often necessary to

prevent the court, in construing their language, from falling into mistakes and even absurdities."

And, quoting Mr. Greenleaf, he adds:

"'The writing, it is true, may be read by the light of surrounding circumstances, in order more perfectly to understand the intent and meaning of the parties.    *    *    * The duty of the court in such cases is to ascertain, not what the parties may have secretly intended, as contradistinguished from what their words express, but what is the meaning of the words they have used.'"

And from Mr. Taylor:

"'Whatever be the nature of the document under review, the object is to discover the intention of the writer, as evidenced by the words he has used; and, in order to do this, the judge must put himself in the writer's place, and then see how the terms of the instrument affect the property or subject-matter.   With this view, extrinsic evidence must be admissible of all the circumstances surrounding the author of the instrument.'"

This doctrine is applicable to wills. *Tuxbury v. French,* 41 Mich. 10, and cases cited upon page 12 of the opinion.

The facts alleged to have been concurrent in this case are that these parties made the agreement alleged; that, acting upon it, the land and mortgage were conveyed, and a will immediately made, giving the wife $40,000, in conformity to the contract; that the estate at that time comprised personal property mainly, there being no real estate of consequence in which the wife might become entitled to dower.   The bill asserts these facts, and possibly others, as a basis for the testator's intention which it alleges. We are not prepared to say that the language of this will must be so strictly construed as to justify the holding that a $40,000 bequest is made in lieu of dower technically understood, when there was very little, if any, property subject to dower.   We think it is not clear from the reading of this will that the testator intended to relieve the defendant Harriet Dakin from her undertaking, and to

permit her to claim property that she agreed to waive in consideration of his provision for her. If the bill should be sustained by the evidence, we should feel constrained to give the will the construction contended for by complainant. When heard upon the evidence, the question becomes one of fact.

The decree sustaining the demurrers must be reversed, the demurrers overruled, with costs of both courts against Harriet Dakin, upon payment of which within a reasonable time, to be fixed by the circuit court for the county of Ingham, in chancery, the defendants should be permitted to answer.

The other Justices concurred.