CHARLES GREENE, APPELLANT, V. RACHEL B. GREENE, APPELLEE.

FILED NOVEMBER 8, 1894.   No. 5491.

1. Husband and Wife: ONE AS WITNESS AGAINST THE OTHER: SPECIFIC PERFORMANCE. In a suit by a husband against his wife to compel her to specifically perform a written contract she had made with him, in and by which she agreed to convey to him certain real estate, neither the husband nor the wife can testify one against the other in the case. *Niland v. Kalish*, 37 Neb., 47, reaffirmed.

2. ——: ——: REPEAL OF STATUTE. Section 331 of the Code of Civil Procedure was not repealed by the enactment of chapter 53, Compiled Statutes, 1893, entitled "Married Women." *Skinner v. Skinner*, 38 Neb., 756, reaffirmed.

3. Specific Performance of Contract Between Husband and Wife: UNDUE INFLUENCE. A husband brought suit against his wife to enforce the specific performance of a contract in writing made by her, in and by which she agreed to convey to her husband certain real estate. The wife defended on the ground that the contract sued on was procured from her by fraud and duress, and undue influence exercised over her by her husband. The evidence failed to establish that the contract was obtained from the wife by fraud or duress, but it did establish that the wife executed the contract because of a species of matrimonial coercion and undue influence exercised over her by her husband. *Held*, That the wife should be released from the performance of the contract.

4. ——: CONSIDERATION. To enable a husband to specifically enforce against his wife a contract by which she has agreed to convey to him certain real estate, it must appear that such contract had for its basis some consideration.

5. —— : —— : UNDUE INFLUENCE: BURDEN OF PROOF. In

such case, if the claim of the husband is that the consideration for the contract was her love and affection for him, or that because of the fact that he was her husband she intended by the contract to make a gift to him of the land described therein, then the burden is upon the husband to show that the wife made such contract freely and voluntarily, with full knowledge of all the facts with reference thereto, and without any fraud practiced upon her, and that she was not induced to make such contract by the coercion or undue influence of her husband.

APPEAL from the district court of York county. Heard below before MILLER, J.

*George B. France* and *N. V. Harlan,* for appellant.

*John H. Ames* and *Sedgwick & Power, contra.*

RAGAN, C.

Robert Blair died in the state of New Jersey about the year 1887 owning the legal title to the south half of the southeast quarter of section 31, in township 11 north and range 2 west of the 6th P. M., and lot 11, in block 58, in the city of York, in York county, Nebraska. Mr. Blair left a will, in and by which he devised an undivided one-half of this real estate to his daughter, Mrs. Rachel B. Greene, then and now the wife of Charles Greene, and an undivided one-half of said real estate to his two daughters, Mesdames Armstrong and Adams. Charles Greene and Rachel Greene, his wife, at this time resided in the city of York, Nebraska. About the month of May, 1888, Mrs. Greene instituted in the courts of New Jersey proceedings for contesting the will made by her father. The grounds of this contest were that she was the owner of said real estate; that her father had loaned her the money with which to purchase it, and that he held the title thereto in trust for her, the agreement being that the money which he had loaned her and which paid for the real estate was to be charged to her as an advancement made to her by her father

out of her share of his estate.   About the same time her
husband, Charles Greene, brought suit in the district court
of York county against the executors of Robert Blair, his
daughters, the Mesdames Armstrong and Adams, and his
wife, Mrs. Rachel B. Greene.   In this suit Charles Greene
alleged that he was the owner of the above described real
estate, and that Robert Blair, during his lifetime, held the
title thereto, in trust for him, the said Charles Greene, and
that Robert Blair had loaned him, Greene, the money with
which to purchase this real estate, and that he held the title
in his, Blair's, name, as security for the money so advanced.
On the 24th day of July, 1888, a compromise and settle-
ment of the will contest was had, and by the terms of this
settlement Mesdames Armstrong and Adams and their hus-
bands quitclaimed to Mrs. Greene all the interest in the
above described real estate which had been devised to them ·
by the will of their father, Robert Blair, and the said will
was then admitted to probate.   Charles Greene was present
at this settlement and consented thereto, and one condition
of the settlement made was that Charles Greene should dis-
miss the suit he had then pending claiming title to this
property in York county, Nebraska, and relinquish all his
claim of title to said property to his wife, Mrs. Rachel B.
Greene.   Charles Greene agreed to this settlement, and on
the 27th day of July, 1888, he evidenced his agreement by
a writing, duly signed, witnessed, and acknowledged by
him, but dated the 24th of July, 1888, and in this writing
he agreed to dismiss without delay the suit he had pending
in York county and relinquish all his claim of title to the
real estate in favor of his wife.   On the same day that he
executed this writing, to-wit, July 27, 1888, he and his
wife, Rachel B. Greene, entered into another contract in
writing, duly signed, witnessed, and acknowledged by both
of them, in and by which contract Mrs. Greene agreed to
convey to her husband the real estate above described, the
consideration being that Charles Greene would dismiss the

suit brought by him and then pending in York county, Nebraska, against his said wife and the heirs and executors of Robert Blair, deceased.   Mrs. Greene having refused to comply with this contract and convey the lands to her husband, he brought this suit for the specific performance of the agreement.   The answer of Mrs. Greene to the suit, so far as material here, set out two defenses : (a) That said agreement was procured from her by fraud, duress, and by an undue influence exercised over her by her husband.   (b) That Charles Greene was estopped from enforcing this contract by reason of his agreement made on the 24th day of July, 1888, and evidenced by him in writing on the 27th day of July, in settlement of the proceedings contesting the will of the said Robert Blair, deceased.   The district court found and decreed the issues in favor of Mrs. Greene, and from this decree Mr. Greene appeals.

1. The first argument relied upon here for a reversal of this decree is the refusal of the district court to permit Charles Greene to testify on the trial of the case.   Section 331 of the Code of Civil Procedure provides : "The husband can in no case be a witness against the wife, nor the wife against the husband, except in a criminal proceeding for a crime committed by the one against the other, but they may in all criminal prosecutions be witnesses for each other."   This provision of our Code was under consideration by this court (RYAN, C., writing the opinion) in *Niland v. Kalish*, 37 Neb., 47.   The action was brought by the creditors of Solomon Kalish to set aside certain conveyances made to his wife, Adalia Kalish.   On the trial the creditors sought to have the husband testify in the case, and also sought to have the wife testify in the case.   The district court, however, excluded the testimony, and the creditors appealed, and this court held that neither the husband nor the wife could testify in the case, as, from the nature of the action, the testimony of the husband would be against the interests of his wife and the testimony of the wife be

against that of her husband, and the judgment of the district court was affirmed. But it is argued that as by chapter 53, Compiled Statutes, 1893, entitled "Married Women," a married woman may bargain, sell, and convey her real estate and enter into contract with reference to the same with like effect as a married man may in relation to his real estate, and that a woman while married may sue and be sued, in the same manner as if she were unmarried, that therefore said chapter 53 repealed said section 331 of the Civil Code and thereby removed the common law disabilities of a married woman as to testifying. This precise question was before this court in *Skinner v. Skinner*, 38 Neb., 756, and it was there held: "But this act [chapter entitled 'Married Women'] has no reference to the right of married women to testify. It does not define nor attempt to define what shall be evidence nor who shall be competent witnesses in any case. It does not deal with the subject of either witnesses or evidence. At common law the contracts of a married woman were void, and the object, and the only object, of this statute [said chapter 53] was to remove her disability to contract and to permit her to contract with reference to her separate property, trade, or business.' (*Godfrey v. Megahan*, 38 Neb., 748, and cases there cited; *Niland v. Kalish*, 37 Neb., 47.) In *Lawson v. Gibson*, 18 Neb., 137, the rule as to the repeal of statutes by implication is thus stated: 'A statute will not be considered repealed by implication unless the repugnancy between the new provision and the former statute is plain and unavoidable.' Now, there is no repugnancy whatever between section 331 of the Code of Civil Procedure, defining the cases and circumstances in which a husband or wife becomes a competent witness against the other, and the so-called 'Married Woman's Act,' removing the common law disabilities of a married woman to make contracts and sue and be sued. At common law neither husband nor wife could testify one against the other in any case. The

rule still remains, except in so far as it has been changed by our statutes." The district court then did not err in refusing to permit Mr. Greene to testify in this case.

2. A second argument relied upon for a reversal of this decree is that it is not sustained by sufficient competent evidence. The evidence does not establish that the contract made the basis of this suit was obtained from Mrs. Greene by fraud. She was not misled by any false representations of her husband as to the actual facts in the case, as she knew at the time she made the contract that her husband had a suit pending in York county against her and the executors and heirs of Robert Blair, deceased, in which suit he claimed to be the owner of the property in controversy; nor does the evidence establish that Mrs. Greene was induced to make the contract sued upon because of fear of violence or injury to her person at the hands of her husband; but it does establish that Mr. Greene did obtain this contract from his wife by a species of matrimonial coercion, or the exercise of an undue influence over her, resulting from their marriage relations, and this is sufficient to release the wife from the performance of the contract. (*Witbeck v. Witbeck*, 25 Mich., 439; *Jenne v. Marble*, 37 Mich., 322.) The decree appealed from is right for another reason. Mr. Greene agreed with the executors and heirs of Robert Blair—his wife included among such heirs—to dismiss the suit he had brought in York county claiming this property, and to relinquish his rights and claims to said property to his wife, if they, the other heirs of Robert Blair, would convey their interest to his, Mr. Greene's, wife. Mrs. Greene thus became vested with the entire property instead of one-half of it, as provided by the terms of her father's will, and the contest over the will was thus settled and compromised, and Mr. Greene solemnly agreed, and evidenced the agreement in writing, to dismiss the York county suit and relinquish in favor of his wife all his claims to said property. It is clear that

if Mr. Greene had not dismissed his suit his agreement made in New Jersey in compromise of the will contest could have been successfully pleaded against him in bar of his further prosecution of the action. The compromise of the will contest was a sufficient consideration to support Mr. Greene's agreement to dismiss his York county suit and relinquish in favor of his wife all claims he had against the real estate involved therein. So far as the record discloses, this agreement was made by Mr. Greene freely and voluntarily, without any fraud practiced upon him and with a full knowledge of all the facts in the case, and was, therefore, as binding on Mr. Greene as were the agreements of the executors and heirs of Robert Blair, deceased, binding on them. (*Prichard v. Sharp*, 51 Mich., 432; *Husband v. Epling*, 81 Ill., 172.) The contract, then, sued on here has for its support no consideration whatever. True, it recites the pendency of the suit brought by Greene in York county, and that he will dismiss such suit in consideration that his wife would convey him the property described therein; but equity regards that done which a party is bound to do, and hence, as matter of law, the York county suit was dismissed at the very time Mr. Greene obtained the contract made the basis of this suit. Mr. Greene's action, then, is a suit against his wife for a specific performance of her contract to convey to him certain lands. The contract is not void because between husband and wife, as a married woman in this state may make valid contracts with her husband in reference to, or upon the faith and credit of, her separate estate. (*May v. May*, 9 Neb., 16; *Skinner v. Skinner*, 38 Neb., 756.) But to enable Mr. Greene to enforce the contract in suit the burden was upon him to show that the contract had for its support some consideration. As already stated, the evidence discloses that there was no consideration. If the claim of Mr. Greene was that because of her love and affection for him, or because of the fact that he was her husband, his

wife, by the contract, intended to make him a gift of this land, then the burden was upon Mr. Greene to show that his wife made such contract freely and voluntarily, with a full knowledge of all the facts in reference thereto, without any fraud practiced upon her, and that she did not make such contract by reason of the coercion or undue influence of her husband. (*Boyd v. De La Montagnie,* 73 N. Y., 498.) The evidence does not show these facts, and the decree of the district court was, therefore, right and is

AFFIRMED.