## Mehitabel Witbeck v. Edmund E. Witbeck.

*Unconscionable bargain: Husband and wife: Fraud: Duress: Evidence.* Upon a bill by a wife to set aside an unconscionable arrangement between herself and her husband, procured by the coercion of the latter, the same full and positive showing of actual fraud or duress is not required, as against a stranger. Any undue advantage gained by the use of the marital relation, is a legal fraud on the wife, which courts of equity will not allow to stand to her prejudice.

*Submitted on briefs July 13. Decided October 8.*

Appeal in Chancery from Ottawa Circuit.

*Edwin Baxter*, for complainant.

*Boynton & Pratt*, for defendant.

CAMPBELL, J.

The bill was filed to set aside an arrangement made between complainant and her husband, the defendant, whereby she conveyed to him a farm in their occupancy, for which he gave her a life lease of the same premises, subject to taxes, and a bond and mortgage to secure one thousand dollars without interest, payable six months after her death. Complainant avers that this was brought about by the urgency and persecutions of her husband, and against her free will. He claims it to have been a bargain of her suggestion and procurement.

The previous family history bearing upon the case, so far as it distinctly appears, is as follows: About ten years before the transaction in dispute, defendant, being a widower, with a number of young children, married complainant, a widow, with two children then grown up,—a son and a daughter, the latter married. Shortly thereafter he purchased a parcel of land with money furnished by complainant, taking the title in his own name; and on this they lived for several years, apparently in harmony, and it is evident from the testimony that she was a faithful mother to his children, who manifest much regard for her.

In 1865, complainant's son having died, she received a bequest from his estate, and entrusted to her husband seven or eight hundred dollars, to purchase for her, and in her name, a farm partly improved, which is the land in controversy. They moved upon this property soon after, the removal being at the motion of defendant. The defendant kept the deed in his possession, unrecorded, until some time in the summer of 1867. At that time complainant procured it from him, and had it recorded, the bill charging, and the proof showing, that he was reluctant to give it up to her, and used angry expressions when doing so. During that summer, and until the matter was closed up, there is uncontradicted evidence of repeated and frequent demands that the property should be deeded to him. He said, for example, "that he wanted her to deed the place over to him, and if she would not give it up peaceably, he would have it any way." "That the place rightly belonged to him." The witnesses state: "It was not talked of in a peaceable manner. He used oaths, swore, and said if she did not give him a deed of it, he would never do another damned thing on it. That he would sell every thing he had, and we might go to hell if

we wanted to." Other facts of a similar character appear, and show beyond any doubt he had determined in some way to obtain a deed of the premises, and would give his wife no peace till he got it. The pretext he sets up now for this conduct is, that there was an understanding that his wife was only to have security on the land for the money she advanced, and he was to have it subject to that amount. But there is no evidence to support any such pretense. The title was taken in her name originally, by himself, and it was only after they had lived on the premises some time, that he seems to have set up any claim of any kind. He made no improvements on the land beyond what was necessary in its use, and had the full benefit of it for the support of himself and family, and he had already another parcel in his own name, purchased by money of his wife, and with her consent. His whole conduct was a piece of shameless and grasping cupidity.

The arrangement made in September appears clearly to have been made, so far as the wife is concerned, to purchase peace. It put it out of her power to get any thing whatever out of her own property. The life lease, unless she should separate from her husband, would really enure to his benefit as much as to hers. The thousand dollars. could never be of any service to any but her heirs, and was much less than the present value of the estate. It was such a bargain as no one would make who had any notion of his own interests, and was evidently the suggestion of the defendant, acceded to after urging amounting to persecution, as an escape from family trouble.

His subsequent conduct is; perhaps, not admissible to affect the prior transactions, unless as it may throw some light on his disposition; which does not appear in any more favorable way, and is not shown in a materially different light.

The demeanor of complainant, in the circumstances immediately attending the execution of the papers, is not in any way decisive. The justice who drew the papers shows that, while defendant made claim that he had rights, she distinctly denied it, and the papers alone, cannot be conclusive.

It seems to be supposed by the defendant, that, in order to invalidate an agreement between husband and wife, she must make out the same full and positive showing of actual fraud or duress, as against a stranger. The law, certainly, does not prevent persons in this confidential relation from doing, without urgency, of their own accord, and under the natural impulses of kindness and affection, such generous acts as are the results of mutual confidence and good-will. But the same principle which encourages confidence, protects it by preventing any profit to be gained from abusing it. The law recognizes the fact that a married woman is easily subjected to a species of coercion, very much more effectual than any ordinary operation of fear or fraud from strangers. It has always been found necessary to examine jealously into all transactions whereby the husband gets an advantage over the wife, not plainly spontaneous on her part. Any undue advantage gained by the use of the marital relation, is a legal fraud on the wife, which courts of equity will not allow to stand to her prejudice. We are not called upon, in the present case, to weigh any trifles, for it is very plain that defendant had determined to let no scruples of delicacy or good feeling interfere with his scheme, and that, when the wife finally gave way, it was because there was no other way to purchase peace. To use her own expression, as she was going over to Holland, to make the papers, she did it, "rather than live in torment all the while."

The transaction was unconscionable, and comes within

the principle of *Stiles v. Stiles, 14 Mich. R., 72.* The fact that such influences are not usually exerted as freely before witnesses as in private, renders it likely that the strong case made out by the testimony, would not be weakened if we could have known more. And when we find the husband succeeding in obtaining what he had threatened he meant to do, against her long continued opposition, and uniform denial of his right, we must infer the cause from the effect, and assume that he exerted such moral coercion as the law considers fraudulent.

The decree must be reversed, and the deed and securities must be cancelled, and the title revested in complainant by proper conveyance, free from any charge or encumbrance, and possession restored to her. The decree of this court will stand in lieu of a conveyance until carried out, and may be recorded for that purpose. Complainant to recover costs of both courts. The decree of this court to be certified to the court below, and remitted for execution, and further proceedings to make it effectual.

The other Justices concurred.